20  237
45  307
20    237
97  1 24

## THE NATIONAL WATER WORKS COMPANY OF NEW YORK, Appellant, v. THE CITY OF KANSAS, Respondent.

### Kansas City Court of Appeals, January 5, 1886.

1. KANSAS CITY CHARTER—POWERS AS TO CHANGING GRADES—CONSTRUCTION OF—CASE ADJUDGED.—Under the charter of Kansas City it had the power to "alter, open, widen, extend, straighten, establish, regulate grades, re-grade, clean or otherwise the streets" within its limits. Under this power, it had the right to change the grade of any street, the grade of which had been previously fixed. This was a legislative power, given for the purpose of promoting the public safety and convenience, and could be exercised only in the manner prescribed in the charter. It could not be parted with, unless such was the clear intent of the legislature. A subsequent act of the legislature authorized said city to contract for water works, "on such terms and conditions as might be agreed upon." *Held*, that by such grant the legislature did not intend to authorize said city to surrender any of the legislative powers granted it by its charter; and by the phrase, "such conditions as might be agreed upon," it was only meant the conditions to which said city, *under its charter*, might agree.

2. ———— CONTRACT FOR WATER WORKS—CONSTRUCTION OF—CASE ADJUDGED.—In pursuance of the act empowering Kansas City to contract for water works, it made a contract with plaintiff to construct and operate such works, and for that purpose granted it the right to lay and keep pipes below the surface of the street for conducting and distributing the water, reserving to said city the right to designate the streets, etc., on which the pipes should be laid and the hydrants located, but providing that "said company shall not be required to lay pipes on any street, etc., on which the grade shall not have been established," and that "the location of hydrants shall be designated by the city, * * * at such time and in such manner as not to * * * interfere with the laying of pipes by the company." The claim is made here by the company that by this "it is contemplated that when once put down, they, the pipes, should be permanent." *Held*, that the evident intention of the parties to the contract was, that, although the city was authorized to designate the streets, etc., upon which the pipes should be laid, still it should not require the company to lay the pipes upon any street, etc., until the grade thereof should be first established; but it was not attempted by the contract, to impair the right of the city to change the grade of the streets.

*Held, further,* that the constitutional inhibition against taking **or** damaging private property for public use without just compensation has no bearing upon this case. The contract was made *subject* to the right of the city to change the grade of the street as public convenience and safety might require.

APPEAL from Jackson Circuit Court, HON. TURNER A. GILL, Judge.

*Affirmed.*

Statement of case by the court.

This is an action brought by plaintiff to recover the cost of lowering and relaying a water pipe of plaintiff's in one of defendant's public streets, made necessary by a change of the grade of said street. The case was tried by the court without the intervention of a jury upon the following agreed statement of facts:

"For an agreed statement of facts in the above entitled cause, it is admitted and agreed : That both plaintiff and defendant are corporations ; that Dripps street is in the corporate limits of defendant, in Jackson county, Missouri, and is a public street. That by ordinance number 19243, the City of Kansas established the grade on said street, and that by ordinance number 19315, the said city caused said street to be graded to said established grade. That both of these ordinances were approved in 1880. Afterward in 1882, by ordinance number 22699 of the defendant's council, the plaintiff was directed to lay water pipes on said street, which was done in July, 1882, placing the pipe the usual and proper distance below the then grade of the street. Afterwards in February, 1883, by ordinance number ·23776, the defendant changed the grade of said street, and by ordinance number 23777, caused said street to be re-graded to the new grade, and by said last grade the said pipe of plaintiff in said street was exposed, and it was necessary for the plaintiff to lower said pipe a proper distance below the said new surface; and which lowering cost plaintiff the sum of one hundred and sev-

enty six, and eighty-four hundredths dollars.   Ordinance number 10524, on page one hundred and two, of published ordinance, may be considered read in evidence."

The plaintiff asked the court to declare the law to be that under the ordinance read in evidence, and the agreed statement of facts, the plaintiff was entitled to recover.   This the court refused to do, and rendered judgment in favor of defendant.

KARNES & ESS, for the appellant.

I.   When the pipes had been laid below the established grade of the street, they were private property. The twenty-first section of article two of the constitution (1875) of this state is "that private property shall not be taken or damaged for public use without just compensation."   In *Householder v. City of Kansas* (83 Mo. 488), this provision was held to be self-enforcing, and that it was a part of the law of the land.   If the city change the grade of a street, if private property abutting thereon is damaged, the owner is entitled to compensation.   If private property lies *beneath* the surface, and is damaged by change of grade, why should not compensation be allowed?   Contract rights must be respected.

II.   The Water Company occupies the streets of the city, not by a mere license, revocable at pleasure, but by a contract, mutually binding on both parties.   The city was to designate the streets upon which the pipes were to be laid ; but it was made a part of the contract that the company should not be required to lay pipes upon any street until the grade thereon had been established. Why was this, if the grade thereafter should be at the caprice of the city?

III.   A proper construction of the contract between the company and the city shows that it was entered into for the mutual benefit of both, and that by its terms, each had rights.   The company conceded to the city the right to designate the streets and to locate the hydrants, and was granted in return the right to refuse to lay such pipes until the grade on any given street had been

established. This was a contract made under special legislative authority. "When the city, laying aside its sovereignty, places itself in the position of a mere contracting party, and deals with the individual, not as a subject, but as a natural person, it subjects itself to the laws controlling natural persons." *City of Burlington v. B. & M. Railroad Co.*, 41 Iowa 141.

IV. The city, through its authority from the state, as conferred by the legislative act of 1873, contracted with the Water Company, whereby rights became vested, and the state itself could not divest them. *The State ex rel. Att. Genl. v. Miller*, 66 Mo. 328.

ED. L. SCARRITT, and W. A. ALDERSON, for the respondent.

I. The right of the Water Works Company to recover in this action is based on the violation by the City of Kansas of contract rights. But the water works ordinance (containing the contract between the city and the Water Company), is, itself, sufficient to defeat this action. We quote from it as follows: "Said company shall indemnify the City of Kansas and save it harmless from all loss, damage, cost and expense resulting from the construction, repairs and operation of said water works." Sect. 2, Ord. No. 10,524. The amount sued for comes under this clause. Any doubt must be resolved in favor of defendant. This construction has been mutually given to it for ten years. In cases of doubt contemporaneous construction turns the scale. *Ins. Co. v. Hoge*, 21 How. (U. S.) 35; *Matthews v. Shores*, 24 Ill. 27; *Solomon v. Com'rs*, 41 Ga. 157; *Plummer v. Plummer*, 37 Miss. 185; *Fall v. Hazelrigg*, 45 Ind. 576; *Scanlon v. Childs*, 33 Wis. 663; Sedg. on Con. of Stat. and Const. Law (2 Ed.) 227.

II. The right to recover for the cost and expense sued for, being a contract right, was the same before the adoption of the constitution of 1875 as now. It being a contract right, the constitution could not affect it, either by increasing it in favor of the one, or impairing it as

against the other.   The contract rights of municipal corporations are inviolable even by the power that creates them.   Cooley on Const. Lim. (5 Ed.) 356.   The company lays its pipes in the streets of the city solely by *virtue of a contract.*

III.   The ordinance gives the city the right to designate the streets; but it does not restrict the laying of pipes by the company, of its own motion, on any and every street of the City of Kansas.   *Quincy v. Bull,* 106 Illinois, 337.

IV.   While the state can place limitations upon the power of the city to improve its streets, the city cannot, *and could not in 1873,* by implied or by express contract, or by license or gift, part with that power, or in any way entangle or restrict it.   Such powers, being in the nature of public trusts, are incapable of alienation or surrender.   The power to grade, re-grade or otherwise improve streets is a legislative and continuing power.   *McCormack v. Patchin,* 53 Mo. 33; *Farrar v. St. Louis,* 80 Mo. 379; *Goszler v. Georgetown,* 6 Wheat. (U. S.) 593; *State v. Railroad,* 75 Mo. 208; *Matthews v. Alexandria,* 68 Mo. 115; *In re Deering,* 93 N. Y. 361; *Railroad Co. v. Louisville,* 8 Bush (Ky.) 420; *Kreigh v. Chicago,* 86 Ill. 407; Dillon on Mun. Corp. (3 Ed.) sects. 97, 680, 683, 716, 719.

1.

HALL, J.—There are only two questions in this case. The questions are: first, did the defendant have the power under her charter to part with the right, by contract with plaintiff to change the grade of those of her streets, upon which, the grade once having been fixed, the plaintiff should lay down water pipes in pursuance of the contract? Second, did the defendant by the contract in this case part with such right to change the grade of said street?

The defendant had the power under her charter

"to alter, open, widen, extend, straighten, establish, regulate grades, re-grade, clean, or otherwise improve, the streets" in her limits. Under this power, granted by the legislature in 1867, the defendant unquestionably had the power and right to change the grade of any street, the grade of which had been previously fixed; and this, too, without rendering herself liable for such change prior to the adoption of the present constitution, in 1875. *Tate v. Railroad Co.*, 64 Mo. 158; *Schatter's v. The City of Kansas*, 53 Mo. 164; *Hoffman v. The City of St. Louis*, 15 Mo. 653. This power was a legislative power, given for the purpose of promoting the public safety and convenience. It could be exercised only in the manner prescribed in the charter. *Thompson v. Boonville*, 61 Mo. 282; *Ruggles et al v. Collier et al.*, 43 Mo. 355. The grant of powers to a municipal corporation must be strictly construed. Cooley's Constitutional Limitations (star paging) 195. A legislative power granted to a municipal corporation cannot be parted with unless such was the clear intent of the legislature, for it will never be presumed that the legislature, having granted the power, has at the same time authorized a surrender of it. The authority to surrender the power must appear from "the clear letter of the law." *Kreigh et al. v. City of Chicago*, 86 Ill. 410. From the mere grant of the power the authority to surrender it cannot be inferred. *Thomson v. Boonville, supra; Ruggles et al. v. Collier et al., supra.*

The plaintiff argues that by an act of the legislature, in 1873 (sess. acts, 1873, p. 286), the defendant was authorized to contract with any person or corporation to erect and operate water works, on such terms and conditions as might be agreed upon, and that by reason of such "act," the defendant was empowered to surrender the right and power to change the grade of the streets under the circumstances supposed in the question. In other words, that the surrender of such power to change the grade of the streets, upon which plaintiff's water pipes should be laid, might, under said "act," be made one

of the conditions in the contract authorized thereby. The power of the legislature over the streets of the defendant was supreme. *R. R. Co. v. City of St. Louis et al.*, 66 Mo. 228, 256. The legislature had the power to authorize the defendant to surrender the power to change the grade of the streets. The only question is, as to whether the legislature granted such authority.

The argument of plaintiff is based upon the power granted to defendant to contract upon such conditions as might be agreed upon. Applying the rule of strict construction to this grant of power, we are clearly of the opinion that by "such conditions as might be agreed upon" were intended the conditions to which the defendant, under her charter, might agree. We hold that by such grant the legislature did not intend to authorize the defendant to surrender any of the legislative powers granted to her by her charter. If such was the intention of the legislature, it should have been clearly expressed. If, under the "act," we should hold that the legislature did intend to authorize the defendant to part with her legislative power to change the grade of her streets, we could not confine such intention to that legislative power alone, but we should have to extend it to all legislative power, therefore, granted by the legislature to the defendant, which the legislature, under the constitution, had the power to authorize the defendant to release and part with. We should have to hold that the legislature intended to authorize the defendant, if she saw fit to so stipulate in her contract, to permit the plaintiff to so lay down the pipes on her streets as to destroy them as public streets. But this intention was not clearly expressed in the "act," and could not, therefore, be maintained. *Lackland v. R. R. Co.*, 31 Mo. 185. We should have to hold, in effect, that, had the legislature, under the constitution of 1865, had the power to authorize the defendant to exempt the plaintiff's property from taxation, by the "act," the legislature did intend to authorize the defendant to so exempt the plaintiff's property from taxation. In short, as said before, we should have to hold

that, by the provision authorizing the defendant to con-
tract for the erection and operation of water works, on
such conditions as might be agreed upon, the legislature
intended to grant to the defendant, as to that contract,
all those powers which, it has been universally held, the
legislature might grant, to be sure, to a municipal corpo-
ration, but only by clear and unmistakable terms. This
we cannot do. This we could not do under the most
liberal construction of the "act." It may be, that, as
contended by the plaintiff, the cases of *Louisville R. R.
Co. v. Louisville* (8 Bush, 4, 20) ; *In re Deering* (93 N.
Y. 361), and *Presbyterian Church v. Mayor* (5 Conn.
538), are not exactly in point upon this question, but the
reasoning of those cases strongly supports our conclusion.

## II.

Admitting that we are wrong as to the conclusion
arrived at upon the first question, and that the defend-
ant had the authority to part with her power to re-grade
the street, did she part with such power by the con-
tract in evidence ?

In pursuance of the "act" of 1873, the city, by ordi-
nance number 10524, as shown in the record, entered into
a contract with the plaintiff to establish, construct, main-
tain and operate water works, in or adjacent to said city,
and for that purpose the right was given to lay, keep
and maintain pipes below the surface of the streets for
conducting and distributing water as aforesaid. By this
contract these works were required to be of such quality
and to accomplish such results as therein specifically set
out.

Section six, of said ordinance number 10524, is as
follows :

"The City of Kansas, by its authorized agent or
agents, shall have a right to designate on what streets,
avenues, lanes, or alleys, water pipes shall be laid and
fire hydrants placed, and the places at which the said
hydrants shall be located, but said company shall not be

required to lay pipes on any street, avenue, lane or alley, on which the grade shall not have been established, and the places for the location of hydrants shall be designated by the city as aforesaid, at such time and in such manner as not to impede or interfere with the laying of pipes by the company."

Upon this question the plaintiff bases its position on section six above. Its argument is that it was "contemplated that when once put down they ('the pipes') should be permanent."

In construing the ordinance "whatever is doubtful is against the corporation." *Lackland v. R. R. Co.,* *supra.* We think that the evident intention of the parties to the contract was that, although the defendant was thereby authorized to designate the streets, etc., upon which the pipes should be laid, still the defendant should not require the plaintiff to lay the pipes upon any street, etc., until the grade thereof should first be established. It was not attempted by the contract to impair the right of the defendant to change the grade of the streets. This right was not touched by the contract. The defendant having the right to designate the streets, etc., upon which the pipes should be laid, that right was limited. Had anything, other than a limitation upon the power of the defendant to thus designate the streets, etc., been in the contemplation of the parties, it should have been clearly expressed in the contract.

We cannot see how the limitation of the power, given by the contract to the defendant to designate the streets, etc., can be construed into a release of the power, not conferred by the contract, but granted by the charter of 1867, to defendant to change the grade of the streets.

As said by the plaintiff its right to recover in this case is based upon the contract, that is, the ordinance, of 1873.

Therefore, the constitutional inhibition (in the constitution of 1875), against taking or damaging private property for public use, without just compensation has no bearing upon this case. The plaintiff, under its con-

tract with defendant, put down the water pipe on the street in question, subject to the right of the defendant to change the grade of the street at any time that the public convenience and safety might require ; and the plaintiff cannot be heard now to complain that its property, the pipe, has been damaged for public use, by reason of a change of the grade of the street thus made by the defendant.

Judgment affirmed, Philips, P. J., con~~.rs Ellison, J., disse᷄ ·᷄