CITY OF CARTHAGE, Appellant, v. THE CARTHAGE LIGHT COMPANY, Respondent.

Kansas City Court of Appeals, December 1, 1902.

1. **Municipal Corporations: CONSTRUCTION: CARTHAGE SPECIAL CHARTER: ELECTRIC LIGHTS.** Legislative grants to municipalities are construed strictly, and in case of reasonable doubt the power is held not granted; so the city of Carthage, under its special charter of 1875, had no power to light its streets by electricity nor to grant a franchise for that purpose.

2. ———: ———: ———: ———: VOTE. The city of Carthage, under its special charter of 1875, had no power to grant the franchise of lighting the city without a majority vote of the people; and poles and wires erected in the street under such grant constitute a nuisance.

3. ———: THIRD-CLASS CITY: LIGHTING FRANCHISE: VOTE. Cities of the third class, under the Act of 1893 may grant the franchise of lighting the city by electricity provided the consent of the majority of the qualified voters is obtained thereto, and without such consent an attempted grant is nugatory and the grantee takes nothing that he can transfer. (Waterworks v. Webb City, 78 Mo. App. 422, distinguished.)

4. ———: ACQUIESCENCE: ESTOPPEL: PLEADING. The long acquiescence of a municipality to the exercise of a franchise can not be considered as an estoppel unless it is pleaded and relied on at the trial.

Appeal from Jasper Circuit Court.—*Hon. J. D. Perkins,* Judge.

REVERSED AND REMANDED.

*H. J. Green* for appellant.

(1) The city had no authority to pass ordinance No. 72. Laws 1875, page 159, section 49. If it is doubtful the question must be determined against the corporation and in favor of the public. St. Louis v. Telephone Co., 96 Mo. 626; Trenton v. Clayton, 50 Mo. App. 539; Kansas City v. Lorbe, 64 Mo. App. 608; 1 Dillon on Mun. Corp. (4 Ed.), sec. 89; Stein v. Water Supply Co., 141 U. S. 80. (2) The city had no authority to pass ordinance No. 301 or that part that attempts to grant a franchise to use the streets and alleys without a vote of the people. Laws 1893, section 95. (3) Franchises for private use without municipal authority are a public nuisance. Sherlock v. Railroad, 123 Mo. 172; Brown v. Railroad, 137 Mo. 529. (4) The city had the right to bring this suit in its own name. Springfield v. Railway, 69 Mo. App. 514; 14 Am. and Eng. Ency. of Pleading and Practice, p. 1137. (5) The evidence in this case shows that respondent had permitted its property to become a nuisance upon the streets and hanging over sidewalks in the city of Carthage. The Central Law Journal, Jan. 17, 1890, p. 49. (6) There is no evidence of an assignment of the

franchises to the Carthage Light Company, nor could there be a valid assignment for the reason that there was no express law under the general statutes by which the electric light company could assign their franchise. 4 Amer. Corporation Cases, page 203; Moore on Corp., secs. 924-930-934; 1 Burch on Private Cor., secs. 362-389; Thompson on Corp., secs. 5355-5373-5374; Stewart v. Jones, 41 Mo. 141; 4 Amer. and Eng. Ency. Law, (1 Ed.), page 238.

*John A. Eaton* and *Howard Gray* for respondent.

SMITH, P. J.—The plaintiff is a city of the third class and the defendant is a business corporation organized in 1897 under the provisions of article 9, chapter 12, Revised Statutes 1889. The plaintiff was organized under the Act of March 15, 1873 (Sess. Acts 1873, p. 221), and the amendatory Act of February 27, 1875, and continued to thus exist until 1890 when it became and ever since has remained a city of the third class under the statute (Sess. Acts 1893, p. 65).

In 1885 the plaintiff by ordinance granted the Sperry Electric Light and Power Company and its assigns permission to erect, maintain and operate electric light works and to transmit power by means of poles and wires for a period of twenty years. In 1894 the plaintiff by a further ordinance granted to F. H. Fitch and assigns the privilege to construct, maintain and operate over certain of its streets and alleys an electric railway, and also the further permission to erect poles and wires for electric lighting purposes. It stands admitted by the pleadings that the plaintiff while it existed under its special charter (the said Act of 1875) the privilege was granted by it to the assignors of the defendant to use its streets and alleys for the erection of poles and the swinging of wires thereon, and that the defendant had succeeded to the ownership of the said privileges so granted to its assignors, and as such assignee was occupying said streets and alleys thereunder.

There is no issue made by the pleadings as to the assignment and ownership of the privileges granted especially to Sperry and Fitch. And if there had been, the uncontradicted and unobjected-to evidence adduced by the defendant clearly established the affirmative of that issue. It is conceded that the plaintiff had at no time granted to the defendant *directly* the right to erect its poles or swing its wires in the streets and alleys of the former, so that if the defendant has any right to use and occupy the streets and alleys of the plaintiff with its poles and wires that right is derived exclusively through the grants made to one or both of its assignors. The question then is, did that right pass to the defendant's assignors or either of them under the ordinances to which we have alluded.

The Sperry privilege was granted in 1885 while the plaintiff was governed by the Charter Act of 1875, so that whether that act authorized the passage of the ordinance granting that privilege is one of the decisive questions we are required to determine. Sections 19 and 26 of article 5 of that act provides that the city council shall have the power by ordinance *"to provide the city with water and light"* and to provide for lighting the streets and erecting lamps thereon; and section 49 of the same article provides that the said council shall also have power to erect, maintain and operate waterworks or gasworks and to regulate the same; to acquire grounds on which to erect such works, etc.; *"provided* (1) the mayor and council may in their discretion grant the right to any person or persons to erect waterworks or gasworks and lay down pipes, mains, etc., for the use of the city and its inhabitants as the council may by ordinance *prescribe; provided* (2) that such right shall not be granted for a longer time than thirty years and shall not be granted unless *the consent* of a majority of the qualified voters of the city voting at an election for that purpose shall so determine."

These three sections of the act are in *pari materia* and must be treated as if one section and that construc-

tion adopted that will give effect to all of them. St. Louis v. Howard, 119 Mo. 41; Andrew County v. Schell, 135 Mo. 31. The first of these confers upon the plaintiff the power to provide light and to erect lamps for that purpose on the streets, and the other authorizes this utility to be provided in one of two ways: that is to say, either by erecting, maintaining and operating gasworks itself, or by granting the right to some other person to do so. The latter section was intended to qualify the exercise of the power conferred by the first two, or, in other words, while the power to light was conferred, the only kind of a plant that was authorized to be constructed for the production of such light was a gas plant. There was no authority given for the construction of an electric plant or to transmit electric power by means of poles and wires placed in the streets and alleys of the city. We may take notice of the fact that in 1875 when the said act was passed, among the possibilities of electricity, that of using it as an illuminator to the extent of lighting a city by means of it, was not one of those contemplated by the Legislature. There are no terms employed in the act which authorized the passage of an ordinance to erect an electric plant or to occupy the streets and alleys with the poles and wires used by it for the transmission of power, etc. The grant of legislative powers to municipalities is to be strictly construed, and if there be a reasonable doubt of the existence of a power it will be held not to have been granted. Knapp v. Kansas City, 48 Mo. App. 485; Kansas City v. Lorber, 64 Mo. App. 608; Waterworks v. Kansas City, 20 Mo. App. 237; St. Louis v. Telephone Co., 96 Mo. 626. It can be safely asserted as a fact that the lighting of the plaintiff city by electricity was not one of the things the Legislature had in mind or intended to authorize or accomplish by the passage of the act.

But if this construction is considered too narrow, and if the contention be upheld that the power to erect an electric plant or to confer that power upon one or more persons is implied in the terms of the act, still the

exercise of that power is denied by the terms of the second proviso of the act already quoted, unless the consent of the majority of the qualified voters was first obtained, and of this there is no pretense.   The proviso just referred to operates as a limitation only on the exercise of the power conferred by the terms of the first proviso.   So that, no difference what construction of the act in its entirety may be adopted, it is clear that the ordinance in question was unauthorized by the act and gave to the grantee therein named or its successor no authority to occupy the plaintiff's streets and alleys with its poles and wires for any purpose.

Turning to the other question, that is to say, whether or not the passage of the said ordinance relating to the grant to Fitch and assigns was an authorized exercise of its charter power, it is to be observed that this ordinance was passed in 1894, after the plaintiff had become a city of the third class under the statute.   So that the question is to be determined by reference to the Act of April 19, 1893 (Sess. Acts 1893, p. 85).   By section 95 of that act the council were authorized to provide for the lighting of streets and the erection of lampposts, poles and lights therefor, and to make contracts with any person for lighting the streets with gas, electricity or otherwise, provided (1) that no contract should be for a longer period than ten years and provided (2) that no such contract should obtain any validity until ratified by a two-thirds majority of the qualified voters, etc.   The section further provides that the council should have the right to erect and operate gasworks, electric light works or works of any other kind or name, and to erect lampposts, electric wire poles or any other apparatus or appliances necessary to light the streets, alleys, etc.; and in the third proviso of the section the council are authorized to grant the right to any person to erect such works, lay the pipe, wires and erect the posts, poles, etc., therefor, and in the fourth proviso of the section it is further provided that such right to any such person shall not extend for a longer period than thirty years, nor be

granted or renewed without the consent of a majority of the qualified voters, etc.

The second and fourth proviso above referred to render a concession by the council, like that to Fitch, nugatory unless consented to by the qualified voters of the city. No such consent to the Fitch concession was ever obtained. While the ordinance in so far as it is intended to furnish authority to Fitch and his assigns to erect upon the streets and alleys poles and wires for the transmission of electricity for heating, lighting and power purposes is invalid and inefficacious, except that it is sufficient to authorize Fitch and his assigns as a part of the equipment of said street railway provided for in other sections of the ordinance, to erect and maintain poles and wires in the streets and alleys of the city incidental to and in connection with the operation of the said street railway, but such right can not be disconnected with the operation of said street railway and transferred to one who does not own the said street railway franchise nor operate the same under it. This ordinance not having been consented to by the qualified voters of the city, as required by the statute, which was the charter of plaintiff, was without legal validity in so far as it authorized the grantee therein to erect posts and wires in the streets of the city to light the same; and to that extent the right conferred by it was not the subject of transfer and, therefore, defendant can base no right on that ordinance.

Some reference is made in briefs of counsel to Waterworks v. Webb City, 78 Mo. App. 422, but that case is not in point here. The city was not there as here restricted in the exercise of the power, that was in question, to a particular mode. Where such a restriction in a charter power exists, that power can not be exercised in a manner that is inconsistent with such restrictions. It seems quite clear to us that the power conferred on the plaintiff city by said several legislative enactments was exercised in a manner inconsistent with the restrictions therein imposed and, therefore, they are invalid and did not confer upon the grantees therein

named nor the defendant, their assignee, the rights claimed by the latter.

Defendant finally argues that even if the poles and wires of defendant were a continuing public nuisance, the plaintiff by reason of its long acquiescence therein is estopped to claim injunctive relief. One of the difficulties about this contention is that no estoppel or acquiescence was pleaded or relied on in the trial, and, hence, there is no issue of that kind before us for consideration. In no case wherein pleadings are required can an estoppel *in pais* be made available unless it is pleaded. Railway v. Curtis, 154 Mo. l. c. 20; Avery v. Railway, 113 Mo. l. c. 568; Hammerslough v. Cheatham, 84 Mo. l. c. 21; Noble v. Blount, 77 Mo. l. c. 242; Ferneau v. Whitford, 39 Mo. App. l. c. 316; Webb v. Allington, 27 Mo. App. l. c. 571.

Accordingly, we shall reverse the decree and remand the cause. All concur.