MEARS MINING COMPANY, Respondent, v.
MARYLAND CASUALTY COMPANY, Appellant.

**Springfield Court of Appeals, March 4, 1912.**

1. EMPLOYERS LIABILITY INSURANCE: Assistance Rendered
by Assured: Solvency of Assured: Protecting Payment of
Judgment. In an action on an employer's liability policy it
appeared that a judgment had been obtained against plaintiff
on account of the negligent killing of one of plaintiff's em-
ployees. The insurance company had full charge of the defense
of the suit. While the appeal was pending, plaintiff (in this
case) in order to consummate a sale of its mining property,
agreed that that much of the purchase price in excess of a
mortgage debt against the property should be deposited in a
bank to be paid on the judgment in case it was affirmed. *Held*,
that such action on part of plaintiff did not violate the con-
dition of the policy which provided that the plaintiff should
render defendant all co-operation and assistance in its power,
even though the deposit of said purchase money rendered it
more difficult to compromise with the judgment creditor by
causing her to feel secure in the payment of that amount of
her judgment.

2. ————: Judgment in Excess of Liability: Reduction of
Excess Judgment: Effect on Liability Under Policy. In an
action on an employer's liability policy, it appeared that a
judgment of $7,000 had been obtained against the plaintiff on
account of the negligent killing of one of plaintiff's employees.
The insurance company had full charge of the defense of this
suit and an appeal was taken to the appellate court where the
judgment was affirmed. After affirmance of the judgment the
same was compromised by plaintiff paying a little over $5,000,
which was the amount of the liability of the defendant com-
pany under its policy. *Held*, that the defendant was not entitled
to any deduction from its full liability on account of the reduc-
tion in the judgment under the compromise thereof.

3. ————: Insolvency of Assured: Duty to Pay Judgment: As-
sistance Rendered by Assured. Insolvency is not a legal
defense to a debt and the question of solvency or insolvency
has nothing to do with the duty to pay, only the ability, and
the assured under the conditions of an employer's liability
policy, requiring it to render the insurance company all the
co-operation and assistance in its power, is not required to
boast of an insufficient appeal bond or its own insolvency for
the purpose of enabling the insurance company to compromise
a judgment from the payment of which the assured was pro-
tected by the policy.

4. **CONTRACTS: Construction: Employer's Liability Insurance.**
An employer's liability insurance policy is construed the same
as other insurance contracts, to-wit: most favorable to the
insured.

5. **EMPLOYER'S LIABILITY INSURANCE: Penalty for Failure
to Pay Loss.** Section 7068, Revised Statutes 1909, which pro-
vides for the recovery of an amount not exceeding ten per
cent of the loss, and reasonable attorney's fees, in an action
against any insurance company for loss under a policy of fire,
life, marine or.other insurance, where the company vexatiously
refused to pay such loss, does not cover actions on employer's
liability insurance, because such insurance is not of the same
class as ordinary fire, life and marine insurance, and was
not in fact in vogue at the time this law was passed, and
the amendment to this section in 1911; so as to include employers'
liability insurance, indicates that the lawmakers were of the
opinion that the statute before amendment was not broad
enough to include such insurance.

6. **STATUTORY CONSTRUCTION: General Words and Particu-
lar Classes: Ejusdem Generis.** Where a statute contains gen-
eral words only, such general words are to receive a general
construction. But where a statute enumerates particular
classes or things, followed by general words, the general words
will not ordinarily have a general meaning, but will be limited
in their meaning to objects of the kind and character specified.

7. ————: ————: ————. The rule that general words fol-
lowed by particular ones will be limited to the same class
as the particular ones, does not apply in full force in all cases,
but is resorted to merely as an aid in the construction of
statutes, and where from a full consideration of the entire statute
and the purposes the Legislature had in view in enacting it,
it is apparent that the Legislature intended the general words
to include classes not specially designated, the general words
must be given a meaning beyond their special class; also where
the particular words exhaust the class then the general words
must have a meaning beyond the class or be discarded alto-
gether.

8. ————: **Penal Statutes: Penalty for Failure to Pay Insurance:
Employers' Liability Insurance.** Section 7068, Revised Stat-
utes 1909, providing for the recovery of damages against cer-
tain classes of insurance companies for vexatiously refusing
to pay losses is highly penal and should not be held to apply
to any company or class of insurance that is not plainly in-
cluded by its provisions.

Appeal from Newton Circuit Court.—*Hon. Carr
McNatt,* Judge.

AFFIRMED (*upon remittitur*).

O. L. *Cravens* for appellant.

(1) Plaintiff cannot recover because it violated certain policy conditions. Ins. Co. v. Myers, 62 Oh. St. 529, 57 N. E. 458; Brown v. Railway Assoc., 45 Mo. 221; Dick v. Ins. Co., 10 Mo. App. 376, 81 Mo. 103; Carr v. Ins. Co., 100 Mo. App. 602; Hoover v. Ins. Co., 93 Mo. App. 111. (2) Under defendant's letter of June 18, 1910, to plaintiff, plaintiff became the agent of defendant to compromise the Overby judgment and could not act in its own interest but owed defendant the duty of acting strictly in its interest, and defendant is entitled to have pro rated the amount of the settlement. 31 Cyc. 1451, 1435; 2 Ency. L. & P., 1057, 1058, 1066; Bent v. Priest, 86 Mo. 482; Patterson v. Glass Co., 72 Mo. App. 492; Marshall v. Ferguson, 94 Mo. App. 175. (3) Even if plaintiff was not acting as the agent of defendant in the settlement of the Overby judgment, the facts disclosed compel a finding that the parties agreed between themselves as to the amount that would be due from defendant upon a settlement by plaintiff with Overby. Ins. Co. v. Witty, 208 Pa. 569, 57 Atl. 990; 9 Cyc. 257, 270; 1 Beach Mod. Law of Contract, sec. 57; Lunstrass v. Ins. Co., 48 Mo. 201; Allen v. Chouteau, 102 Mo. 309; Stotesburg v. Massengale, 13 Mo. App. 221; Lancaster v. Elliot, 28 Mo. App. 93; Gardner v. Crenshaw, 122 Mo. 79; Am. Pub. Co. v. Walker, 87 Mo. App. 503; Brown v. Smith, 113 Mo. 39; Smith v. Williams, 123 Mo. App. 485; Sawyer v. Walker, 204 Mo. 159. (4) Under the indemnity contract plaintiff can recover only five sevenths of the limit of defendant's liability, Lead & Zinc Co. v. Ins. Co., 152 Mo. App. 339; Land Co. v. Rhodes, 54 Mo. App. 129; Hayden v. Lauffenberger, 157 Mo. 88; Thompson v. Kellogg, 23 Mo. 281; Ridge v. Olmstead, 73 Mo. 578; Cowgill

v. Robberson, 75 Mo. App. 42; Friermuth v. McKee, 86 Mo. App. 64; Way v. Caddell, 82 Mo. App. 144; Brown Banking Co. v. Baker, 99 Mo. App. 660; Winter v. Railroad, 73 Mo. App. 173, 160 Mo. 159; Chamberlain v. Smith, 110 Mo. App. 657; Tucker v. Dolan, 109 Mo. App. 442; Hanson v. Crawford, 130 Mo. App. 232; Clay v. Lakeman, 101 Mo. App. 563; Reinhold v. Kerrigan, 85 Mo. App. 256; Bassett v. Kern, 141 Mo. App. 24; Ewing v. Reilly, 34 Mo. 113; Bank v. Pettit, 85 Mo. App. 499; Franz v. Morgan, 6 Phila. 8; Allen v. Ins. Co., 145 Fed. 881.  (5) The general words of section 7068 cannot properly be construed to include policies of the kind in question here. Langstaff v. Rock, 13 Mo. 579; Ex parte Neet, 157 Mo. 527; St. Louis v. Laughlin, 49 Mo. 559; State ex rel. v. Ennis, 79 Mo. App. 12; Bramell v. Adams, 146 Mo. 70; Joplin v. Leckie, 78 Mo. App. 70; McCutcheon v. Railroad, 72 Mo. App. 271; Hale v. Stimson, 198 Mo. 158; Miller v. Wagenhauser, 18 Mo. App. 14; Grumley v. Webb, 44 Mo. 457; Dart v. Bagley, 110 Mo. 42; Knox City v. Thompson, 19 Mo. App. 523; State ex rel. v. May, 106 Mo. 505.


*George Hubbert* for respondent.

(1) The jurisdiction of this court and the legality of its judgment and mandate in the Overby case, stand beyond reasonable question; and loss under the policy sued by payment of $5203.25 to satisfy the judgment is equally clear as the basis of appellant's legal liability under the law.  Overby v. Cas. Co., 144 Mo. App. 363; Lead & Zinc Co. v. Ins. Co., 152 Mo. App. 333; State ex rel. v. Nixon, 232 Mo. 106.  (2) Even if no judgment had ever been rendered, nor any defense made, on account of the failure of the insuring company to assume the defense under its policy, the assured would nevertheless be free from the onerous conditions of suffering and paying judgment and jus-

tified in making the best available terms of reasonable settlement with the claimant, in such case the insurer could not deny liability. News Co. v. Fidelity Co., 83 S. W. (Ky.) 620; Railroad v. News Co., 151 Mo. 390; St. Joseph v. Railroad, 116 Mo. 643; Beef Co. v. Casualty Co., 201 U. S. 173, 50 L. Ed. 712. (3) The amount of such payment or true cost to respondent in money, in satisfaction of the judgment, in whole or in part, marks the sum of the liability of the appellant for the loss, within the stipulated limits, with costs additional, equalling $5203.25, with interest from date of loss by payment; and this is true though such payment might have been through other persons, or by other than cash means, if of substantial money value. Cas. Co. v. Light Co., 157 Fed. 514; Stembon v. Engine Co., 119 N. W. (Wis.) 308, 20 L. R. A. (N. S.) 856, 956; Kennedy v. Fidelity Co., 110 N. W. (Minn.) 97, 9 L. R. A. (N. S.) 478; Railroad v. Cas. Co., 96 Pac. (Wash.) 509, 18 L. R. A. (N. S.) 121; Ins. Co. v. Moses, 49 Atl. (N. J. Eq.) 720, 92 A. S. R. 663. (4) Courts seek to conserve rather than destroy, and the first and greatest rule of all that bears to a true interpretation of the statute (section 7068), against vexatious delay in payment is, that "words and phrases shall be taken in their plain or ordinary and usual sense. R. S. 1909, sec. 8057; Interstate Drainage Co. v. Board, 158 Fed. 273; U. S. v. Mescall, 215 U. S. 26, 54 L. Ed. 77; Bank v. Ripley, 161 Mo. 126; Ex parte v. Smith, 231 Mo. 119; State v. Eckert, 232 Mo. 49; Rissell v. Taylor, 4 Mo. 550; Henderson v. Wabash, 81 Mo. 605; State v. Broderick, 7 Mo. App. 20; Wonner v. Carterville, 142 Mo. App. 126; State ex rel. v. Yates, 231 Mo. 276; State ex rel. v. Harter, 188 Mo. 516; Keeney v. McVoy, 206 Mo. 64; State v. Weber, 205 Mo. 43; Armstrong v. Modern Brotherhood, 132 Mo. App. 171.

GRAY, J.—This action is predicated upon an employer's liability policy, issued by the appellant to respondent, July 2, 1907, by the terms of which the former agreed for a valuable consideration, to indemnify the respondent for a period of twelve months, against loss from liability that might be imposed by law upon respondent not exceeding $5000 on account of death or bodily injuries suffered by any one employed by the respondent. At the time the policy was issued, the respondent was engaged in mining in Newton county, and on the 30th day of July of that year, one Frank Overby, an employee of respondent, was killed in its mines. Mr. Overby's widow instituted suit against the respondent to recover damages for her husband's death, and secured a judgment for $6000. The appellant took charge of that suit, under the terms of the policy, and caused the same to be appealed, and the judgment was affirmed by this court on the 2nd day of May, 1910. After the affirmance, the respondent negotiated a settlement with the widow, by the terms of which the judgment, which at said time amounted, with interest and costs, to a little over $7000, was settled for the sum of $5203.35, which was the full amount the appellant was liable for under the terms of its policy, and which amount was paid to the widow and the judgment satisfied by her assignee. This suit is instituted to recover the amount so paid, together with the sum of $1100, which plaintiff claimed it was entitled to recover as damages and attorneys fees on account of defendant's vexatious refusal to pay the said $5203.35. The cause was tried before the court without a jury, resulting in a judgment in favor of the respondent for the amount claimed under the terms of the policy, and $1 damages, and $250 attorney's fee. From this judgment, the appellant appealed to this court.

The appellant's first contention is, that plaintiff is not entitled to recover because it violated certain

conditions of the policy. The part of the policy it is claimed the plaintiff violated, reads as follows: ''The assured shall at all times render to the company all co-operation and assistance in his power. The assured shall not voluntarily assume any liability, nor shall the assured, without the written consent of the company previously given, incur any expense or settle any claim, nor interfere in any legal proceeding.''

While that suit was pending in this court, negotiations were entered into for the sale of the mining company's property in Newton county, but it was discovered that the judgment obtained by Mrs. Overby was a lien on the real estate of the company, and notwithstanding an appeal bond had been given, the purchaser, on account of this lien, refused to pay the purchase money to the company. In addition to the judgment lien, there was a prior mortgage lien, securing an indebtedness of $6500. The property was sold for $10,000, and the sale was consummated by the company agreeing that the $3500, the amount of the purchase price in excess of the mortgage debt, should be deposited in a bank in Neosho to be paid to Mrs. Overby in case her judgment was affirmed. It is claimed this action on the part of the mining company was in violation of the terms of the policy above set forth, and released the appellant herein. This contention is based on the theory that when the $3500 was put in the bank, it caused the plaintiff in the damage suit to feel secure as to that amount of her judgment, and therefore, rendered it more difficult to compromise with her than it otherwise would have been.

There is no evidence that the appeal bond was not good for the amount of the judgment, or that the fact that the money was put in the bank in any wise rendered a settlement with Mrs. Overby more difficult. The purchaser was willing to take the property subject to the lien, if the amount of the equity over and above the mortgage, and to which the widow

could look for the collection of her judgment, was deposited in the bank, and not paid to the mining company.

Forfeitures are not favored, and the courts will not put upon language any technical construction for the purpose of creating a forfeiture. The appellant's attorney says: "We submit that while the appeal was pending and in view of the belief that must have existed in the mind of Overby and her attorney, that plaintiff was insolvent and the collection of her judgment was in jeopardy, defendant, under the terms of the policy, was entitled to the full use and benefit of that circumstance. Defendant had the sole right by the policy, at least at that time, to deal with that suit and to control plaintiff therein. If Overby and her attorney believed the appeal bond was invalid and plaintiff knew of that circumstance, it needs no argument to prove that plaintiff was not rendering defendant 'all co-operation and assistance in its power' when by its independent conduct it secretly made a contract with Overby whereby it deposited $3500 for her benefit in case of an affirmance. Was it not within the power of plaintiff to co-operate and assist defendant by allowing Overby to remain in the belief of the notorious fact that plaintiff was insolvent and the appeal bond was such that recovery thereon was doubtful?"

If insolvency is a legal defense to a debt, this argument is sound. But the question of solvency or insolvency has nothing to do with the duty to pay, only the ability. We do not think it was the duty of the mining company to boast of an insufficient appeal bond, or of its own insolvency for the purpose of inducing Mrs. Overby to accept less than the full amount of her debt. On the other hand, it was the duty of this plaintiff to pay the judgment when it was affirmed, and this duty existed, whether it was solvent or not.

The appellant in this case had charge of the damage suit in the appellate court, and had the benefit of a stay of execution by reason of the appeal bond, and had no legal right to demand that the respondent miss a good opportunity to sell its property because in case of a sale the respondent would thereby get money and show its ability to pay its legal demand, and thus make it more difficult to get Mrs. Overby to accept less than her just debt.

Not only does the appellant insist that respondent forfeited all rights to its indemnity because it placed its assets where they would be available to meet the demands of its creditors when their validity had been established, but it had the audacity to write the respondent, after the judgment had been affirmed, that it was disappointed because respondent was not insolvent. This indefensible and contemptible sentiment is found in a letter written by appellant's claim agent to the respondent, and in which he said: ''We . . . hoped when this bonding (appeal) question first came up that there would be some means, by which on account of the condition of the assured company, it would be unnecessary for any one to pay out any money in connection with this accident.''

Thus we find the appellant boldly writing to the respondent that it hoped that the latter's mining adventure had been so unfortunate that its capital was lost, and it would be unable to pay its debts including the claim of the widow for the wrongful killing of her husband, and whose claim had been approved by a judgment of a court of last resort. And all of this in order that this appellant might thereby be relieved from the performance of its contract it had voluntarily entered into and for a consideration of its own naming.

The judgment, interest and costs amounted to about $7000, and as it was settled by plaintiff for $5203.35, the appellant claims it is entitled to the ben-

efits of the compromise on the basis or ratio that its liability of $5000 bore to the total liability. The clause of the policy relating to this feature, reads: "No action shall lie against the company to recover for any loss under this policy unless it shall be brought by the assured for loss actually sustained and paid in money by the assured in satisfaction of a judgment after trial of the issue."

The appellant's claim is based, first, on the theory that there was an agreement between the parties, by which the plaintiff was to settle the loss if compromise could be made on the ratio above stated.

On June 16, 1910, and after the judgment had been affirmed, Mr. Johnson, president of the plaintiff corporation, wrote to the defendant that he had had an intimation from the attorney of Mrs. Overby that the matter might be compromised for something less than the judgment, and suggested that the manager of the mines at the time Overby was killed, might be able to settle the claim. This part of the letter reading: "Therefore, if you want to employ him along with ourselves (as we, of course, will have to pay anything demanded after your obligation is exhausted), we will join you— he will go under directions of our attorney."

In reply to this letter the appellant sent the following dispatch on the 17th: "Your letter 16th received; we will pay five-sevenths of any amount in settlement up to $5,000, and $100 towards expenses of adjustment." On receipt of this telegram, the respondent wired: "Your telegram received; I can't understand your position; are you trying to shirk your $5,000 limit per contract." The appellant replied: "For example of what we mean, suppose a compromise adjustment should be arranged for $5,000, we to pay five-sevenths of this amount, and you to pay two-sevenths, our expenditure would, of course, not be as great as the limit of our policy. On the other hand, neither would yours be as much as if you had to pay

all over and above the limit of our policy upon the present condition of affairs, and for any settlement under $5,000 the expenditure would be graded accordingly.''

On June 25th, the respondent replied to this letter, stating: ''I can make no other reply to yours of the 18th, than to say we seem to be hung up in Neosho for judgment, interest and costs, $7,103.35. My attorney thinks, however, on account of complications that may arise that they can at once be settled with for $6,000. For some other reasons I have telegraphed him to make an offer of $5,000, and I have arranged for his getting the money at once if accepted. The situation is peculiar; to begin your company should have taken advantage of an opportunity open for a year to have settled for $3,500, and up to the affirmation of the appeal for from $4,000 to $4,500. Under the circumstances a nice thing for you to do will be to send me, upon receipt of this, your draft for $5,000 on account, before anything else happens to jeopardize the amount, leaving it to my integrity to make honorable final settlement.''

On June 28th, the appellant replied to this letter, stating: ''The offer made you in our letter of June 18th, also holds good in the event that settlement be made for $6,000; by this we mean that we think it only fair to us that we receive our pro rata share of any saving in the settlement proposition, and that the amount contributed by us be in the same proportion as our separate responsibility.'' In the letter, however, the company stated that it refused to send the $5000 requested by respondent in its letter of June 25th.

On July 6th, the respondent notified the appellant in writing that it had settled the judgment for $5203.35, and stating: ''I think it is making the amount $5,203.35 net which you surely will not complain of when you were without question held for more than $7,000, on account of not taking advantage of the opportunity to

settle for $3,500." On July 8th, appellant answered this letter, stating that according to its previous proposition, it would stand five-sevenths of the amount of the settlement, and would send the draft for the same. On July 11th, the respondent answered this letter, stating: "I am in receipt of yours of the 8th, in which you continue your enigmatical treatment of our case with you—what it all means, I cannot understand as there is no such thing in your contract, or rather policy, as fractions of any sort, therefore, your five-sevenths is something not in sight. As I read your policy you are limited to a loss not exceeding $5,000."

On August 31, 1910, the appellant sent to the respondent its draft for $3817.04, being the proper amount due the respondent, if the appellant's contention that it is only liable for five-sevenths of the amount paid to satisfy the judgment, is correct. The draft was returned.

These letters failed to make a contract between the parties to pro rate the amount paid to satisfy the judgment. It appears from the letters that the appellant made such an offer, but it also appears that each time it was rejected by the respondent, and that the latter at all times was claiming that on account of the manner in which the appellant had handled the suit, that the amount of the judgment was in excess of what it otherwise would have been, and really it was the duty of the appellant to discharge the same. Of course the appellant had the right to contest the suit, and was not responsible because the judgment was in excess of the $5,000 covered by the policy, notwithstanding the suit might have been compromised for a less sum. But on the other hand, the respondent was not bound to accept five-sevenths of the amount of the policy, unless it agreed to do so.

It is next claimed that even though there was no agreement yet as the policy required the mining company to render to the insurance company all co-

operation and assistance in its power, that it was the former's duty to make the best settlement possible, and to give the insurance company the benefit of such settlement. There is no question but what this would be true, if a settlement had been made with the consent of appellant, previous to the final determination of the damage suit in the appellate court. When Mrs. Overby instituted her suit against the respondent to recover for the death of her husband, and notice thereof was served on the appellant, then under the term of the policy, the appellant had the right to pay the amount of the indemnity, and be released from any further claim or expenditures. But if for any reason, the appellant concluded to contest the right of the plaintiff in that suit, to recover, or concluded to compromise the claim or to try the cause with a view of reducing the judgment below the $5000 indemnity, it had the right to do so, and when it took charge of the suit and carried it to the court of last resort, and lost, then the suit was at an end, and the respondent had discharged its duty under the clause in the policy requiring it to furnish assistance in the suit, and there remained but one thing between the respondent's right to recover from the appellant the amount of the indemnity provided, in the policy, and that was to satisfy the judgment. In other words, when the judgment was affirmed, the respondent was liable for the full amount thereof, but the appellant was not liable to Mrs. Overby for any part of the same. The only duty the respondent owed the appellant was to make as good a settlement as possible, and if it was not required to pay $5203.35 in payment of the judgment, to give the appellant the benefit of the difference.

When the true nature of the contract is considered, its purpose was to protect the respondent from any liability whatever, up to $5000 and such costs as were incurred in the litigation, while the appellant had charge thereof. In other words, the appellant

agreed to hold the respondent harmless up to that amount, and unless it took more than the amount of the indemnity to satisfy a judgment or claim, the respondent was not be called upon to pay any part of the same.

This is an insurance contract, and is to be construed the same as other insurance contracts, to-wit, most favorable to the assured. It occurs to us that in the absence of a special agreement, the only duty the respondent owed the appellant, after the judgment had been affirmed, was to proceed in good faith to satisfy it by the payment of as small amount as possible. But if in doing so it was required to pay more than the amount of the indemnity, this in no wise relieved the appellant from a full performance of its contract.

The last assignment of error relates to the action of the court in allowing $250 attorney's fee and damages for vexatious delay in the payment of the indemnity.

Complaint is made to the introduction of certain letters on this branch of the case, but in view of the disposition made of this part of the judgment, it will not be necessary to consider this complaint.

The objection to this part of the judgment is, that the statute in force at the time this suit was instituted, did not authorize a judgment for damages or attorney's fees. The statute referred to is section 7068, and reads as follows: "In any action against any insurance company to recover the amount of any loss under a policy of fire, life marine or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not exceeding ten per cent on the amount of the loss and a reasonable attorney's fee."

The question is, do the words "or other insurance," include the contract sued on in this case? If the statute did not expressly name any kind of insurance, but used general words, then it would cover all kinds of insurance contracts, as the rule is well established that where a statute contains general words only, such general words are to receive a general construction, and the effect of them is not to be limited except by express words in the statute itself. [Davenport v. Hannibal, 120 Mo. 150, 25 S. W. 364.]

The rule is equally as well settled that where a statute enumerates particular classes of persons or things, followed by general words, the general words will not ordinarily have a general meaning, but will be limited in their meaning to objects of the kind and character specified. [St. Louis v. Laughlin, 49 Mo. 559.]

As said by the presiding judge of this court, in Wonner v. Carterville, 142 Mo. App. 120, 125 S. W. 861: "The rule unquestionably is that where general words follow particular ones, the courts will construe them as applicable only to persons or things of the same general character or class, and cannot include things wholly different from those specifically mentioned."

The rule that general words following particular ones will be limited to the same class as the particular ones, does not apply in full force in all cases. The rule is resorted to merely as an aid in the construction of statutes, and where, on a full consideration of the entire statute and the purposes the Legislature had in view in enacting it, it is apparent that the Legislature intended the general words to include classes not specially designated, the general words must be given a meaning beyond the special class. [State v. Smith, 135 S. W. 465.] It is also true if the particular words exhaust the class, then the general words must have a meaning beyond the class, or be discarded altogether.

[National Bank v. Ripley, 161 Mo. l. c. 132, 61 S. W. 587.]

Another well-settled rule to be considered in construing the statute is, that it is highly penal and should not be held to apply to any company or class of insurance that is not plainly included by its provisions. It is apparent that without the general words, the appellant's business is not included in the statute, and therefore, if it is subject to the provision of the statute, it is made so by the general words. It is equally apparent that the particular words do not exhaust the class, and therefore, if the general rule is not to be applied, it must be for some other reason.

The statute expressly names three kinds of insurance, to-wit: fire, life and marine. These classes of insurance are common and have been in general existence for such length of time "that the memory of man runneth not to the contrary." This statute was first enacted in 1865, and continued in force without material change, until 1911, when the Legislature amended it so as to expressly include indemnity contracts of insurance. At the time the statute was enacted, there were certain classes of insurance other than the ones expressly named therein, and it may well be said that it was such insurance that the Legislature intended to cover by the general words. The words "other insurance" may include wind-storm or cyclone insurance, as such insurance would undoubtedly belong to the same class as fire insurance, as the loss would be the same, and of the same character, whether a man's house was burned or blown away.

While it is not conclusive, it is to be considered in construing the statute, that the character of insurance written by the defendant, was not in existence at the time this statute was enacted. [City of Carthage v. Carthage Light Co., 97 Mo. App. 20, 70 S. W. 936.]

In Breeden v. Ins. Co., 220 Mo. 327, 119 S. W. 576, in speaking of this character of insurance, the court said: "Indemnity insurance, as understood in this class of litigation, is of comparatively recent origin. After a careful investigation I have been unable to find any policy of that character antedating the year 1886."

The fact that the Legislature in 1911 amended the statute so as to include this character of insurance, is strong evidence that it was the opinion of the lawmakers that it was not included in the prior statute. [Strottman v. Railroad, 211 Mo. 227, 109 S. W. 769; Crohn v. Telephone Co., 131 Mo. App. 313, 109 S. W. 1068.]

In Strottman v. Railroad, supra, the question was whether a certain right existed prior to a statute enacted in 1905, and the court said relating thereto: "The passage of the Act of 1905 tends to show that it was the opinion of the lawmakers that no such right existed prior to that time; otherwise, there was no occasion for its passage."

In the same case, Judge LAMM delivered a dissenting opinion, and on this point said: "If the act (1905) related to and covered only one subject, to-wit, the keeping alive (after the death of the injured party) of a cause of action arising in favor of such party, then there would be great force to the insistence that in the legislative mind such cause of action, up to that time, did not survive, and the new Act of 1905, created the right of survival." This language of Judge LAMM's is specially applicable, because the amendment of 1911 only included one subject and that was to add to the existing statute, by express terms, other kinds of insurance.

This suit was instituted before the Act of 1911 went into effect, and the respondent does not claim that this amendment can be looked to to sustain this part of the judgment.

The premises considered we are of the opinion that the statute in force at the time this suit was commenced, did not include within its provisions, insurance companies issuing indemnity contracts insuring against common-law negligence, as such insurance is not of the same class as ordinary fire, life and marine insurance.

If the plaintiff will, within ten days, file a remittitur for $251, the penalty imposed, with the legal rate of interest thereon, since the date of the judgment, we will order its affirmance for the sum of $5203.35, together with interest since the date of the commencement of this suit, otherwise the judgment will be reversed and the cause remanded.   All concur.