**MISSOURI PUBLIC SERVICE CORPORA-
TION v. FAIRBANKS, MORSE & CO.
et al.**

**No. 2877.**

District Court, W. D. Missouri, W. D.

April 3, 1937.

A. Z. Patterson and D. C. Chastain (of· Sparrow, Patterson, Chastain & Graves), and Cyrus Crane (of Lathrop, Crane, Reynolds, Sawyer & Mersereau), all of Kansas City, Mo., for plaintiff.

Robert B. Fizzell (of Bowersock, Fizzell & Rhodes), of Kansas City, Mo., and Russell Pickett, of Trenton, Mo., for defendant.

OTIS, District Judge.

This memorandum opinion is· supplemental to and to be read with our memorandum filed in this proceeding on the 16th day of January, 1937, on plaintiff's application for a temporary injunction. 19 F. Supp. 38. The findings of fact therein set out (being findings 1, 2, 3, 4, 5, 6, 7, and 8) are adopted as findings of fact made upon final hearing, being supplemented by other findings of fact herein set out (the supplemental findings are numbered 9, 10, and 11).

The plaintiff is engaged in manufacturing and selling electricity in the city of Trenton. It claims to have a perpetual but not an exlusive franchise from the city. As a franchise holder and also as a taxpayer, it seeks in this proceeding an injunction preventing the completion of the construction of a municipally owned and operated electric plant which, if completed and put in operation, will compete with plaintiff. The municipal plant was well on toward completion when plaintiff's bill was filed. Bonds had been voted. They had been sold. The proceeds, in large part, had been paid out when the plaintiff came into this court. The ground (among others which we regard as without merit) upon which the plaintiff claims the construction now under way (except as interrupted by our temporary injunction) is illegal is the alleged failure of the city to comply with certain Missouri statutes governing the advertising for and the letting of bids for this type of public work.

The case has been submitted after final hearing. We issued a temporary injunction upon the theory that (1) under the allegations of the bill the plaintiff does

have a franchise or its equivalent and therefore is entitled to equitable relief against illegal competition, and (2) that there had been, at least in one respect, a failure to comply with state laws governing the letting of contracts for the construction of the proposed municipal plant. We reserved for decision after full hearing such serious questions as whether the plaintiff does have a franchise or its equivalent or can maintain this action as a taxpayer and whether it has been guilty of such laches as, in any event, shuts it off from injunctive relief.

### Has Plaintiff a Franchise?

1. Obviously, it is most important to determine in limine whether the plaintiff does have a franchise since, if it has none, it has no standing to maintain this action (unless on certain other grounds hereafter to be considered). The facts relevant to the issue (and we find them to be the facts) are:

9. The plaintiff owns whatever franchise rights were granted to D. C. Jones and associates by ordinance of the town of Trenton enacted July 22, 1886.

10. The ordinance referred to in finding of fact No. 9 is as follows (for reasons which later will appear, it is necessary that the entire text of the ordinance be set out):

"An Ordinance Authorizing the Construction of Gas and Electric Light Works, and Establishing Rules and Regulations Governing Same.

"Be it ordained by the Council of the Town of Trenton as follows:

"Section I. That said Town of Trenton hereby grants unto C. D. Jones and associates, their successors and assigns, hereinafter to be known as the Trenton Gas & Electric Light Company, the privilege of erecting gas and electric light works or either of them in said Town of Trenton, State of Missouri, and of repairing and extending the same and of laying gas mains and pipes (underground) and erecting lamp posts, electric light poles and wires for the purpose of supplying the town and citizens with gas and electricity for light and other uses. But nothing herein shall be construed as giving said gas and electric light company any exclusive rights as to any of the privileges hereby granted.

"Section II. For the purpose of carrying into effect the privileges granted by Section One of this Ordinance, said gas and electric light company is hereby authorized to use the streets, alleys, sidewalks, bridges and public grounds of said Town of Trenton and to make all necessary excavations therein, but the same shall be done with due and reasonable dispatch and with the least practicable interference with or (without) inconvenience to the rights of the public and individuals; and said company shall restore all streets, alleys and sidewalks, bridges and public grounds when excavated by them to their original condition. So far as practical and in case any obstruction caused by said company shall remain longer than three days after notice to remove the same or in case of neglect by said company to protect any dangerous places by proper guards, said Town of Trenton may remove or protect the same at the expense of said Company.

"Section III. In laying down pipes and mains and erecting lamp posts, poles or wires, said gas and electric light company shall conform to all reasonable regulations which are or may be prescribed by the Town Council and shall not interfere with to change or injure any water pipes, drains or sewers of said town or any water company grantee of said town and shall be subject to the directions of the Committee on Internal Improvements.

"Section IV. Said Trenton Gas & Electric Light Company is hereby authorized to construct and maintain gas and electric light works or either of them in said Town of Trenton, and to repair and enlarge the same and to carry on the business of manufacturing gas and electricity or either of them and distributing the same to the Town of Trenton and citizens thereof, and in consideration of the advantages to be derived by the town and its citizens by the constructions and maintenances of gas works in said town it is hereby understood and agreed that said Town of Trenton will subscribe for and use during the full term of fifteen years gas street lamps to the number of at least ten, to be located by the Mayor and Council along the lines of street mains laid down. Provided that said town may order any lamp posts moved to any other point on the line of mains already laid down by paying the cost of such removal and that whenever required to supply street lamps beyond the line of street mains already laid down, said company shall extend the mains to any other

point for the purpose at the expense of the town.

"Section V. Said company shall erect posts and lamps (the lamps to be of metal and glass and posts of iron of good pattern) all connected, piped and fitted ready for use at a cost to the town of not exceeding Twenty Dollars per lamp, and supply the same with gas during all dark hours of the night not lighted by the moon, as per customary schedule, at not exceeding Two and 50/100 Dollars per month per lamp nor the average price paid for similar services in cities and towns of about the same population in the state. The average flame of each lamp to equal to that of sixteen standard candle power and in all respects of a good and satisfactory quality. The customary schedule of lighting being to light one half hour after sunset and one hour before moon set and to extinguish one hour before sunrise and one hour after moonrise. It is also agreed that any additional lamps ordered along old or new mains shall come within the terms and conditions of this ordinance the same as if enclosed in the original number. Said Company shall be allowed the sum of Twenty-five Cents per month for lighting, extinguishing, cleaning and ordinary repairing of said lamps, until the number of lamps shall reach thirty, when said Company shall assume the care of said lamps.

"Section VI. This Ordinance is conditioned on the building or causing to be built by the said Trenton Gas & Electric Light Co., gas or electric light works in the said Town of Trenton of sufficient capacity to supply the same and its citizens and laying not less than one mile of street mains on Water & Elm Sts., and branching therefrom, which said gas or electric light works shall be commenced on or before August 1, 1886, and completed on or before December 1, 1886, and also upon supplying said town and its citizens with gas of a quality equal to that of sixteen candle power as per customary standard at a price or rate not exceeding the equivalent of Two and 50/100 Dollars for one thousand ft. of sixteen standard candle power coal gas, provided that whenever the number of private consumers shall reach two hundred, such price or rate shall be reduced to Two Dollars for the equivalent of one thousand ft. of standard coal gas and that the cost to private consumers shall at no time exceed the average price paid in cities or towns of the same size in this state for the same amount of light.

"Section VII. That in case of a failure at any time to supply the said town with a good quality of gas for the space of ten days, except in case of injury to the works in which case all possible diligence shall be exercised to repair the same or should said company for any reason abandon the enterprise, or cease to operate the works, then the rights and privileges herein granted shall cease, and determine and no notice shall be necessary on the part of the Town, but so long as said Company shall well and truly keep and perform the conditions of this ordinance, the rights and privileges granted herein shall not be revoked or forfeited for any other causes and said Company shall at all times have equal rights as to the use of the streets, alleys, sidewalks, bridges and public grounds now or hereafter belonging to said Town, with any other company which may hereafter be chartered.

"Section VIII. That whenever said town or any citizen thereof shall desire to use gas in any street or locality not reached by the mains already laid said company shall upon application of one or more consumers to each one hundred ft. of main extension required proceed to lay such additional mains as may be necessary to supply such petitioner within a reasonable time for the making of such application and agreement to use gas to the company; for this purpose each additional street lamp shall count as one consumer and provided said company shall extend the mains any greater distance when so required upon the applicant's paying the cost of such main extension beyond the 100 ft. above provided for.

"Section IX. The privileges herein granted are upon the express conditions that said company and its assigns shall be liable for all damages or injury to persons or property caused by the neglect or mismanagement of itself or any of its employees while engaged in constructing or operating its works and should the town be sued therefor, said company shall be notified of such suit and thereupon it shall be their duty to defend or settle the same and should judgment go against the town in any such case, the town shall recover the same with costs from said company, and the record of judgment against the town in any such case shall be conclusive evidence to entitle the town to so recover

against said gas and electric light company.

"Section X. All acts, ordinances and parts of acts heretofore passed inconsistent with this ordinance are hereby repealed.

"Section XI. This Ordinance shall take effect and be in force from and after its passage.

"Passed and approved this 22nd day of July, A. D. 1886.

"C. A. Hoffman, Mayor.
"Attest: W. E. Cline, Clerk,
"By CAU."

Upon these facts plaintiff contends that it has a perpetual franchise to manufacture electricity in the city of Trenton and to distribute that electricity through the streets of the city and to customers in the city. Whether it does have such a franchise is a question of law. If the council of the town of Trenton had the power to grant a perpetual franchise to D. C. Jones and his associates to manufacture electricity in Trenton and to distribute it to customers through the streets and alleys of the town, and if the council did grant such a perpetual franchise to Jones and his associates, then we must go on to the consideration of other matters. If there was no such power to grant and no such grant, very possibly plaintiff is shut off at the very threshold from obtaining the relief it prays.

█ The charter of the town of Trenton (see Laws of Missouri for 1872, p. 481) provided in section 1 of article 3 thereof as follows:

"Section 1. The town council shall have power within said town by ordinance not repugnant to the laws of the land: * * *. to establish, open, abolish, alter * * * improve all streets, avenues, alleys, sidewalks, public grounds and squares, and to provide for the lighting, * * * the same; * * * to pass all such ordinances as may be expedient in maintaining the peace, good government, health and welfare of the town."

We have no doubt that in this provision of the charter (absent some applicable and restrictive statutory provision) was sufficient authority for the granting of a nonexclusive franchise to some natural or artificial person authorizing that person to manufacture and sell electricity in Trenton and to use the public streets, avenues, and alleys in its distribution. Such a

franchise, so granted, if not limited in duration, probably would be regarded as a perpetual franchise to use the streets, avenues, and alleys of the city.

In 1886, however, there was in force a statute enacted by the General Assembly of Missouri that we conceive limited the power of the council of Trenton. It was provided in that statute (sections 951 and 952, R.S.Mo.1879) that no city, town, or village might grant gas and water franchises involving the use and occupancy of streets, avenues, and alleys unless such proposed franchises first were submitted to the vote of the people and approved. The plaintiff contends that that statute, referring only to gas and water franchises, has no application to a franchise authorizing the manufacture and distribution of electricity through streets, avenues, and alleys. That contention would be meritorious if what was granted to Jones and associates was only a franchise for the manufacture and distribution of electricity.

█ Reference now to the ordinance set out in full in finding of fact No. 10 and a careful reading of that ordinance clearly will demonstrate beyond any possibility of controversy that what was granted to Jones and associates was not a franchise to manufacture and distribute electricity (and that only). Primarily, it was a franchise to manufacture and distribute gas. Judicial notice will be taken of the fact that in 1886 the use of electricity for lighting and other purposes was only just beginning. Artificial lighting then was primarily by gas, in so far as there was any system of public lighting from some central plant. The ordinance before us is devoted almost entirely to the subject of manufacturing and selling gas. The reference to electricity obviously is incidental. The only consideration that is stated as going to the city in exchange for the rights and privileges granted by the city is "the advantages to be derived by the town and its citizens by the construction and maintenance of gas works in said town." The only positive obligation imposed upon Jones and his associates is that they shall maintain gas lights in such places along the public streets as may be located by the mayor and council. All the emphasis in the ordinance is on gas and lighting by gas. There is even an express provision (section VII of the ordinance) "that in case of failure at any time to supply the said town with a good quality

of gas for a space of ten days * * * the rights and privileges herein granted shall cease and determine, and no notice shall be necessary on the part of the town."

It seems to us that it must be at once conceded that in so far as this ordinance was a franchise to manufacture and distribute gas and for that purpose to use the streets, avenues, and alleys of the town of Trenton it was absolutely void. The ordinance had not been submitted to the people as was required by the general laws of the state. If, however, that conclusion is sound, if all of the ordinance relating to the manufacture and distribution of gas is void, other parts of the ordinance, although, if separately enacted, they might be valid, fall when the principal subject-matter of the ordinance is shown to be void. The rules governing in this situation are too familiar to require elaboration. The presumption is that a statute or an ordinance was intended to be enacted as a whole. It is only when it clearly appears that some provision of the statute or ordinance is separable and that it would have been enacted even if other parts were not enacted that the presumption is overcome. No reasonable man considering this ordinance will say that the town council of Trenton would have enacted only the parts referring to the manufacture and distribution of electricity if it had known that the rest of the ordinance was void.

Our conclusion is that no valid franchise of any kind was granted to Jones and his associates. Since no franchise was granted to them, they had none to assign to others and the plaintiff, their successor now, has no more than they obtained. The fact that every one assumed for a long period of time that a valid franchise was in existence (because apparently it was to the interest of no one to investigate the matter) does not make that valid which in the beginning had no validity.

Of course, a federal court of equity will not grant an injunction in this case unless the plaintiff is in some way injured in its property rights. If it has a franchise, then it has a valuable property right which will be injured by illegal competition, a sufficient property right to maintain this proceeding. We have seen that it does not have a franchise. It is vigorously contended, however, by learned counsel for the plaintiff that it has the equivalent of a franchise. And it may be conceded ar-

guendo that if the plaintiff has the equivalent of a franchise, then it has a sufficient property right involved to support the proceeding.

### Has Plaintiff the Equivalent of a Franchise?

2. The theory of counsel for plaintiff is that the conduct of the city of Trenton through many years has been such as to estop the city of Trenton from now denying that the plaintiff has a franchise, even although as a matter of fact it has none. Whether this contention is sound we consider it unnecessary to resolve. It would be necessary to decide that question if this were a proceeding brought by the city of Trenton against the plaintiff to oust the plaintiff from the use and occupancy of the city streets and from the operation of its plant. Even in such a proceeding the latest decision of the Supreme Court of Missouri on the question doubtless would control. That decision is State ex inf. v. Missouri Utilities Company, 96 S.W. (2d) 607, 106 A.L.R. 1169. But this is not a proceeding instituted by the city of Trenton against the plaintiff. It is not a case in which the burden of proof is upon the city. The burden of proof is upon the plaintiff. The plaintiff must prove that it has a franchise or its positive (not merely its negative) equivalent. A defense to an ouster proceeding which has not been instituted is not a property right supporting an affirmative proceeding in a court of equity.

### Plaintiff as Taxpayer.

3. Plaintiff has another string to its bow. Its learned counsel contend that even if it has neither a franchise nor its equivalent it may maintain this action as a taxpayer in the city of Trenton. And it may be conceded, for present purposes at least, that upon a showing that if no such injunction as that prayed is granted, the plaintiff will lose more than $3,000 in taxes, which the granting of the injunction would save it, then it has a sufficient property interest in the result to maintain this proceeding. The difficulty here is that plaintiff has not proved it would save one penny in taxes from an injunction preventing the completion of the construction of the municipal lighting plant in Trenton. The contracts into which the city has entered may be invalid, but the bond issue was not invalid. The bonds have been sold to innocent purchasers. The city of Tren-

ton has received the proceeds of those bonds. When the bonds mature, they must be paid. Interest on them must be paid. The principal and interest of the bonds must be paid by the city of Trenton. It may be that the taxpayers will be required to pay that principal and the interest from taxes levied on them. They will have to do that in any event, whether the contracts for the construction of the plant are valid or invalid, whether a plant is erected that will compete with the plaintiff or none is erected. There is nothing in the evidence in the case that would support a conclusion that the bonds were unlawfully issued and sold.

In addition to the findings of fact set out above, we make this further finding:.

"11. The taxes which plaintiff will be required to pay to the City of Trenton will not be increased by reason of the fact that any contract for the construction of any part of the municipal lighting plant referred to in this proceeding is void."

In view of the findings of fact hereinbefore made and the legal conclusions hereinbefore indicated, we now formally declare as a conclusion of law that the plaintiff has no such property interest as entitles it to the relief in equity prayed by it in this proceeding. There is no jurisdiction in equity to grant the relief prayed by the plaintiff.

### Matter of Laches.

4. What we have so far said really makes it unnecessary to go further. We may add, however, that we believe that the defense of laches earnestly advanced by learned counsel for defendants has been sufficiently sustained. If there was no other reason for dismissing plaintiff's bill, that reason would be sufficient. But we do not elaborate the matter.

Counsel for plaintiff so thoroughly believe that they are entitled to the equitable relief they seek and have presented their case with such earnestness and ability (and are so highly respected by us) that we are especially anxious they shall have every opportunity to secure injunctive relief from the Circuit Court of Appeals, if we have been in error in our views of the case. It is for that reason that we incorporate in the subjoined order and decree of dismissal a provision that the order and decree shall not be effective until May 1, 1937. In the interim, plaintiff's counsel will have quite sufficient time to apply to the Circuit Court of Appeals (and to have a ruling on an application) for an injunction pending final determination of the case in that court.

### Decree.

Upon final hearing upon plaintiff's bill and defendants' answer thereto, the court having made findings of fact and conclusions of law and being fully advised in the premises, the bill is dismissed. It is so ordered, adjudged, and decreed.

To this order and decree and to the court's conclusions of law and to each of them plaintiff is allowed an exception.

It is further ordered that this order and, decree of dismissal shall not become effective until May 1, 1937, upon which day the temporary injunction heretofore issued shall be dissolved.

Costs are assessed against plaintiff.