THE CITY OF LEXINGTON ex rel. PRICE, Collector, v. LAFAYETTE COUNTY BANK, Appellant.

Division One, December 17, 1901.

1. **Taxation:** CITIES: POWERS TO CONSTRUCT WATERWORKS: TO RENT HYDRANTS, ETC. The power given a city by its charter to purchase and construct waterworks, is no authority to rent hydrants and tax the people therefor. But authority "to provide the city with water......for the extinguishment of fires and the convenience of the inhabitants generally," leaving the manner of such provision

to the city and its authorities, is such power. The provision can not be made without expense, and the power to incur the expense is implied, and, hence, the power to levy the tax is implied.

2. ———: ———: INDEPENDENT OF CHARTER. Independent of any provision in its special charter, a city with less than ten and more than one thousand inhabitants has authority under the general statutes of this State to contract with a private water company for the payment of hydrant rental for supplying the city with water and to grant it a franchise for the laying of its mains, etc., provided the city does not thereby incur a rate of taxation in excess of the constitutional limit.

3. ———: ———: ———: LAWS: DFECTIVE TITLE OF AMENDMENT: ORIGINAL VALID ACT. Where the original act conferred on a city the power to contract with companies for the supplying of its streets with water, etc., it is immaterial whether a subsequent amendatory act which attempted to confer the same power, is or is not constitutional.

4. Concession of Counsel: HOW FAR BINDING ON APPEAL. The extent to which counsel's misconception of the law is held against him is that, when he has induced the court to make a wrong ruling he will not be heard afterwards to complain of it. So that, where counsel for respondent city in a tax suit at the trial stated the city did not rely for its authority to levy the tax on a general statute, but upon its special charter and the Constitution, it will not be bound by such concession on appeal.

5. Taxation: WATER SUPPLY: EXCESSIVE OF MAXIMUM RATE. A city organized under a special charter in 1884 had the authority, under the general statute of 1859 (G. S. 1865, p. 370, sec. 15) authorizing it to enter into contract with a company for the supply of its streets with water for a period of twenty years and to meet the annual payment due under such contract, to levy a tax during that time of forty cents on the hundred dollars in excess of fifty cents for general revenue purposes. And this statute is not in violation of section 12, article 10, of the Constitution fixing a maximum limit to municipal taxes.

6. ———: CITY'S CONTRACT: RATIFICATION. Where the language of the Constitution is that the city shall not become indebted for waterworks, etc., without the assent of the voters, it is immaterial in legal effect whether the contract was signed by the company before or after it was submitted to the people.

7. ———: ———: SUBMISSION TO PEOPLE: REGULARITY: ADMISSION AT TRIAL. Where it was admitted at the trial that the proposition

for waterworks was duly submitted to the people and approved by them, the appellate court will not consider an objection to the form in which the question was submitted.

8. ——— : ——— : AMENDMENT: INVALIDITY OF WHOLE: IMMATERIALITY. If an invalid amendatory ordinance was passed by the council after the people had indorsed the original proposition for the supply of water, the contract will not be held invalid if the original covers all the points in issue, or if the amendment concerns matters of detail affecting the operation of the works.

9. ——— : ASSESSMENT: CLASSIFICATION OF PERSONALTY. Where the assessment list of a company, furnished to it by the assessor, is made out and signed by its president, it is not in a position to complain that the list did not specify its property by classes, but instead made a lumping or "total valuation."

Appeal from Lafayette Circuit Court.—*Hon. Richard Field,* Judge.

AFFIRMED.

*Wm. H. Chiles* for appellant.

(1) Section 6, of the city charter, which authorizes the city to levy a special tax for the erection of.......waterworks and the purchase of.............waterworks, and the entire section, which is lengthy, shows that the powers are strictly limited to such erection or purchase of waterworks and can not by any implication authorize a tax for hydrant rental from a waterworks owned by some other person or company. Nor can such power be delegated. Waterworks Co. v. City of Kansas, 20 Mo. App. 237; Railroad v. Morley, 45 Mo. App. 304; Stewart v. City of Clinton, 79 Mo. 603. Under this section of the charter, a public debt may be created to build or purchase waterworks only, such debt to be paid by a series of annual assessments, for which a proposition to levy such special tax must be submitted to a vote and approved by a majority of the voters of the city. (2) The general power

Vol 165 mo—43

"to provide the city with water, to make, regulate and establish public wells, pumps, hydrants and reservoirs in and under the streets," is only ancillary to the powers of taxation referred to above, and certainly contains no authority to tax beyond the one-half per cent per annum, attempted to be exercised in this case. (3) The respondent, however, contends that the power of the city under its old charter (1870) was added to and reinforced by the provisions of the present Constitution (1875). This court has decided that such is not the law, but that legislation is necessary to give the added power claimed. State ex rel. v. Van Every, 75 Mo. 530. (4) The waterworks Act of 1879 (Laws 1879, p. 47), the provisions of which it seems the city attempted to comply with in this case, is clearly unconstitutional for these reasons: Its title expresses nothing, and its subjects, which are several as stated hereafter, are none of them "clearly expressed in its title." Constitution, art. 4, sec. 28. It will be noticed in comparing decisions made under the old Constitution, that its similar provisions (Const. 1865, art. 4, sec. 32) does not contain the word "clearly," making the present constitutional provision the stronger. State v. Mathews, 44 Mo. 526; State v. Miller, 45 Mo. 495; City of Kansas v. Payne, 71 Mo. 159; State ex rel. v. County Court, 102 Mo. 531. (5) The ordinances passed by the respondent city do not comply with its provisions. (a) The act requires that the "contracts entered into" shall be submitted to and ratified by vote. In this case, the ordinance, which is the contract, was not signed by the waterworks company when it was submitted, and not until after the election, and was therefore no contract when voted upon. (b) The vote should have been for the ratification or non-ratification of a proposed contract, but it was simply for or against waterworks, which was not only a non-compliance with the acts, as it did not submit the proper question, but it was misleading. Every voter in the city might have been in favor of waterworks, while a great majority might have been opposed to the provisions of the contract to be

proposed.   (c) The original ordinance voted upon, not being satisfactory to either party and "a controversy having arisen as to its existence as a contract," it was changed and amended by the city and waterworks company in an amendatory ordinance without such change being also submitted to and ratified by a vote as provided in the act in question.   For these reasons the original and amendatory ordinances should have been excluded by the court on the objections of the appellant.   (6) During the argument of the case, however, Mr. Welborn, counsel of record for respondent, stated to the court that the respondent did not rely upon the Act of 1879, but solely upon the charter of the city as offered, and the power derived from the Constitution, for the power to levy the water taxes in issue herein, which statement is preserved in the bill of exceptions. This eliminates that act and question from this case.   The admissions of attorneys of record bind their clients in all matters relating to the progress and trial of the cause.   1 Greenleaf on Evidence (5 Ed.), sec. 186, p. 241.   Solemn admissions, in course of judicial proceedings, are regarded as conclusive upon a party, at least for the purposes of the case in which they are made.   State v. Brooks, 99 Mo. 142; Moling v. Barnard, 65 Mo. App. 603.

*Jno. Welborn* and *Chas. Lyons* for respondent.

(1)   The city of Lexington, under the charter and laws of Missouri, had ample power and authority to levy the taxes sued for.   Water and Electric Light Co. v. Lamar, 128 Mo. 188; Aurora Water Co. v. City of Aurora, 129 Mo. 540; Saleno v. The City of Neosho, 127 Mo. 627; Water and Electric Light Co. v. City of Lamar, 140 Mo. 145; Water Co. v. City of Neosho, 136 Mo. 498; Asphalt Paving Co. v. Ullman, 137 Mo. 543; R. S. 1879, sec. 952; R. S. 1899, sec. 1342; Laws 1879, p. 47.   (2)   Act of 1879 is constitutional and courts hesitate to declare a law unconstitutional on the

ground that the title does not clearly express the subject of the act. State v. Burgdoerfer, 107 Mo. 1; State ex rel. v. County Court, 128 Mo. 440. And it is sufficient if the title does not mislead as to the chief topic of the act and that the minor features of it have a reasonable and natural connection with the subject named in the title. State ex rel. v. Miller, 100 Mo. 439; Lynch v. Murphy, 119 Mo. 163. And in the case of State ex rel. v. Heege, 135 Mo. 112, cited by appellant, the title was both misleading and deceptive and does not clearly express the subject of the act. The generality of a title is no objection so long as it is not made to cover legislation incongruous itself, and no provisions in a statute having a natural connection with the subject expressed, and not foreign to it, is deemed within the constitutional inhibition. St. Louis v. Tiefel, 42 Mo. 578; State v. Mathews, 44 Mo. 523; State v. Miller, 45 Mo. 495; Hannibal v. County of Marion, 69 Mo. 571; State ex rel. v. Mead, 71 Mo. 268; Commonwealth v. Green, 58 Pa. St. 226; Walker v. Dunham, 17 Ind. 483; State ex rel. v. Union, 33 N. J. L. 350. But should the court hold the Act of 1879 unconstitutional, the city had the authority, under its charter and ordinances and the power derived from the Constitution, to levy and collect the taxes sued for. (3) The amendatory ordinances passed after the ordinance had been adopted by a two-thirds vote, is constitutional and it was not necessary that said amendatory ordinances should be again submitted and ratified by vote, as the main question had once been submitted and ratified by a two-thirds vote of the city. Water Co. v. City of Aurora, 129 Mo. 583; Water Co. v. City of Neosho, 136 Mo. 509; Water and Light Co. v. City of Lamar, 140 Mo. 157; Graff v. Foster, 67 Mo. 520; Benjamin on Sales, sec. 703. (4) No assessment of property, or charges for taxes thereon, shall be considered illegal on account of any informality in making the assessment, or in the tax lists, etc. R. S. 1889, sec. 7563; R. S. 1899, sec. 9179; State ex rel. v. Phillips, 137 Mo. 259; Cooley on Taxation

(2 Ed.), pp. 283, 284, 285; Railroad v. Gracey, 126 Mo. 472; State ex rel. v. Bank of Neosho, 120 Mo. 168; State ex rel. v. Tobacco Co., 140 Mo. 218. Every person must give a correct list to the assessor. R. S. 1889, sec. 7531; R. S. 1899, sec. 9144; State ex rel. v. Hoyt, 123 Mo. 348; State ex rel. v. Springer, 134 Mo. 228. A taxpayer is estopped to deny the correctness of a list furnished by him to the assessor and to contest the assessment made thereon. Hubbard v. Wendson, 15 Mich. 146; Jeffries v. Clark, 23 Kan. 319; Building & Savings Assn. v. Lightner, 47 Mo. 393; Express Co. v. St. Joseph, 66 Mo. 675; Dennison v. Co. Com. of Williamson County, 153 Ill. 516; People v. Atkinson, 103 Ill. 45; Mathews v. City of Kansas, 80 Mo. 231; Ellerbe v. Bank, 109 Mo. 445; San Francisco v. Flood, 64 Cal. 504; Dear v. Varnum, 80 Cal. 86; San Francisco v. Pennie, Admr., 93 Cal. 465.

VALLIANT, J.—This suit is to collect taxes assessed by the city of Lexington for the purpose of raising a fund with which to discharge its obligation to the Lexington Water Company for the rent of hydrants furnished by the company to the city under a contract. The corporate power of the city to make the contract and lay the tax is denied by the defendant, and that denial raises the chief question in the case.

There is no dispute as to the facts. Lexington is a city of less than ten thousand and more than one thousand inhabitants, existing under a special charter granted in 1845, and amended in 1870, it having never elected to come under the general charter of cities of that size. In 1884 the city passed an ordinance looking to the establishment of a system of waterworks, granting to the Lexington Water Company the right to construct such a system and the usual franchise as to use of streets, etc., for a period of twenty years, and agreeing to rent fifty hydrants from the company, to pay annually therefor $4,000, and to levy a tax not exceeding forty cents on the

one hundred dollars valuation of all taxable property in the city, to meet the payments. Before entering into the contract, the ordinance was submitted to the voters of the city and approved by two-thirds of them at an election held for that purpose. The ordinance is set out in full in the record, and contains many specifications looking to the supply of water, not only to the city for public use, but also to the inhabitants thereof, at rates designated, and to the general regulation of such a system; it is deemed unnecessary, however, to copy it into this statement, as its purport is sufficiently indicated above for the purpose of this suit.

By the city charter the city council is given power to levy taxes on all property in that city not exempt "not exceeding one-half of one per centum upon the assessed value thereof; to defray the contingent expenses of the city, and for other purposes not herein otherwise provided for, which tax shall constitute the general fund." [Sec. 2, art. 5.]

The city council is also empowered to levy a special tax "for the erection of markets, city halls, hospitals, workhouses and waterworks and gas works within or without the city limits, for the purchase of market ground, public squares, parks, gas or waterworks, or for any public improvement; provided, the estimated cost of such improvement or purchase be apportioned by the city council and collected by a series of annual assessments, but no tax or taxes shall be levied under this section in any one year which shall exceed five mills on the dollar on the assessed value of the entire taxable property of the city, for any and all purposes in this section specified; provided, further, that the proposition to levy such special tax shall have been first submitted to a vote of the qualified voters of said city, and approved by a majority thereof." [Sec. 6, *idem*.]

And in the enumeration of the powers of the council in another section of the chapter is this: "*Fifth*, to provide the city with water; to make, regulate and establish public wells, pumps, cisterns, hydrants and reservoirs in or under the streets

within the city, or beyond the limits thereof, for the extinguishment of fires and the convenience of the inhabitants generally."
[Sec. 9, art. 4.]

Those were the only charter provisions offered in evidence at the trial. They appear in the amended charter of the city of Lexington in the Laws of 1870, p. 366.

The waterworks were constructed and the hydrants furnished as agreed. The city has each year since then levied a tax of forty cents on the $100 valuation of property to pay the rental of the hydrants, which levy was in addition to the one-half of one per cent levied annually for general city revenue. The defendant paid the general revenue tax assessed against it for the years 1892, 1893, 1894 and 1895, and tendered that for 1896, which was refused, but declined to pay each year the forty cents assessed for the hydrant rents, and after due demand therefor this suit was brought to recover the same. The trial court rendered judgment in favor of the plaintiff and the defendant has brought the cause here for review.

I. The charter provision in section 6, article 5, above quoted, does not contemplate the obtaining of a supply of water by renting hydrants, but has in view the construction or purchase of waterworks by the city. It is, therefore, no authority for the ordinance and contract in question. The power conferred, however, in the fifth subdivision of section 9 of article 4, is general in its terms and seems sufficient to confer, if there is no constitutional restriction, the power claimed. The power conferred is "to provide the city with water;....
......for the extinguishment of fires and the convenience of the inhabitants generally." How the water is to be provided is left to the judgment of the council. As it can not be provided without expense, the power to incur the expense is implied, and as means to meet the expense can only come from taxation, the power to levy the tax is implied. But independent of its charter, the city had authority under the general

statute law of the State to make this contract, unless the authority conferred by the statute is restricted by the Constitution.

At the trial, the counsel for the defendant brought to the attention of the court an act of the General Assembly entitled "An Act to amend section fifteen, chapter sixty-nine, of the General Statutes of the State of Missouri," approved May 16, 1879, and argued to show that the action of the city council in this matter was taken in pursuance of that act, and that that act was in violation of certain clauses of our Constitution, and such is the contention of the learned counsel before this court.

The act is in these words:

"Section 1. That section fifteen of chapter sixty-nine of the General Statutes of the State of Missouri, be and the same is hereby amended so as to read as follows: The municipal authorities of any city, town or village in which any water company shall be organized under this chapter, may contract with any such company for the purpose of supplying with water the streets, lanes, alleys, squares and public places in any such city, town or village, for any length of time which shall be agreed upon between such city, town or village and such company, for a term not to exceed twenty years; and the provisions of this section shall apply to all cities, towns and villages in this State, whether organized by special charter or under the general laws of the State, any provision in any special charter of any city, town or village in the State, to the contrary notwithstanding: Provided, that contracts entered into under the provisions of this act shall have no legal form until the same shall be submitted to a vote of the qualified voters, at a general or special election of such city, town or village, and shall be ratified by a two-thirds majority of the legal votes polled at said election."

The main objection urged against the validity of the act is that the subject is not expressed in the title, the statute

attempted to be amended being merely referred to in the title of the amendatory act by number of section and number of chapter in the General Statutes, without stating the subject or title of the chapter.

It is argued that whilst it has been decided that an act amendatory of a section of the Revised Statutes is sufficient in its title, if it refers to the original by number of section and chapter and by title of the chapter, yet that it has not been so decided where only the number of section and number of chapter are given.  In support of this position counsel cites a number of decisions of this court dealing with the subject, among which some of the more recent are State ex rel. v. County Court, 102 Mo. 531; State ex rel. v. County Court, 128 Mo. 427; State ex rel. v. Heege, 135 Mo. 112.  It will not be necessary, and therefore not proper, for us to decide that question now, because if it be conceded that the amendatory act of 1879 is unconstitutional the power claimed by the city would not be affected because that power is conferred in the original act.  The original is contained in section 8 of an act entitled "An Act to provide for the establishing of gas and waterworks," approved February 28, 1859, and appears in the General Statutes of 1865, p. 370 in these words: "Sec. 15.  The municipal authorities of any city, town or village, in which any gas light or water company shall be organized under this chapter, are hereby authorized to contract with such corporation for the lighting by gas or supplying with water the streets, lanes, alleys, squares and public places in any such city, town or village."

There the power is conferred in unmeasured terms; the amendatory act, if valid, only places restrictions on the power held by the city under the original act, and if, as contended by appellant, the city conformed its action in this matter to the requirements of the amendatory act, it was still acting within its powers, for it might of its own motion have so restricted its conduct, that is, limited the contract to twenty

years and not enter into it until two-thirds of the qualified voters of the city signify their approval of it, which is all that the amendatory act requires.    [See Laws 1879, p. 47.]

The provisions in the amendatory act to the effect that it shall apply to all cities and towns whether organized under general or special charters has no effect in this case because the original act applied to the city of Lexington without the amendment, and that is as far as we are concerned with its application now.

In the brief for appellant, attention is called to the fact that at the trial counsel for respondent stated that the city did not rely for its authority on the statute, but on the charter provisions and the Constitution, and it is argued that respondent is thereby precluded from relying on it now.    A party under certain circumstances is bound by his solemn admission of a fact during the trial, but a mere erroneous concession as to the law which has not misled the court does not bind the party.    The extent to which one's misconception of the law is held against him is, that when he has induced the court to make a wrong ruling he will not be heard afterwards to complain of it.    But that was not this case.

We conclude, therefore, that under its charter and the general statute law in force at the time, the city of Lexington had authority to enter into the contract and levy the tax in question, unless its acts in this respect are in violation of the restrictions contained in section 11, article 10, of the Constitution.    On this point the learned counsel for appellant refer to State ex rel. v. Columbia, 111 Mo. 365, and the opinion of Judge BLACK, in Division, in Lamar Water Co. v. Lamar, 128 Mo. 188, but add that the point is not decisive if that view is not sustained.    In the case last cited the court In Banc overruled the Columbia case and decided that the power to make the contract and levy the tax under statutory provisions similar to those we are here considering, was not forbidden by section 11 of article 10, but were authorized by the

provisions of section 12 of that article. Twice since then that question has been before this court and upon both occasions the court has said that the question had been fully considered and determined in the Lamar case last cited, and declined to open it for reconsideration. [Water Co. v. Aurora, 129 Mo. 540; Water & Light Co. v. Lamar, 140 Mo. 145.] We will not, therefore, again enter upon a discussion of it. Under the authority of our decisions in the cases above mentioned, we now hold that the power exercised by the city of Lexington in making the contract and assessing the tax in question was not forbidden by the Constitution.

II.   (a) The point is advanced that the contract was not submitted for ratification by the people as the Act of 1879 requires, that is, that when the ordinance was submitted to the vote it had not been signed by the waterworks company, and was therefore not a contract but only a proposition. The word "ratify" means to make valid, to confirm, to sanction. In legal phrase it usually means to approve or confirm by a principal what has been done by an agent or one assuming to act for another, and that is the sense in which it is used in the statute. The city council is the agent of the inhabitants of the city. The only thing the council could do was to pass the ordinance and the only thing the people could do was to confirm or disapprove what their agent had done. In this instance there was no difference in legal effect between confirming the ordinance before or confirming it after it was accepted by the water company. The language of the Constitution on this point is that the city shall not become indebted in such case "without the assent of two-thirds of the voters," etc. [Sec. 12, art. 10.]

(b) Objection is also made to the form in which the question is said to have been submitted to the people, that is, "for or against waterworks." But the record shows that at the trial it was admitted that the proposition as contained in the

ordinance was duly submitted at the election and approved by two-thirds of the voters.

(c) After the original ordinance had been adopted by the council and the proposition ratified by the people at the election and signed and accepted by the water company, there was an amendatory ordinance passed by the council which was not submitted for ratification by the people, and it is insisted that that vitiates the whole transaction. If that action of the city council was invalid, if a submission to a vote and ratification by the people was necessary to make it valid, then the amendatory ordinance may be cast aside and the contract evidenced by the original ordinance remains which fully covers all the points in controversy in this case. The amendments, however, are concerning matters of detail affecting the operation of the works and do not add to or impair the contract so far as the furnishing of the hydrants by the company and their use by the city are concerned, nor do they add to or take from the city's liability to pay for their use.

(d) Lastly, it is insisted that the assessment against this defendant was not according to law. The point is that on the assessment roll no property is specified; the blank furnished by the assessor on which there are calls for various kinds of personal property in classes, horses, mules, hogs, money on hand, etc., etc., is returned with none of those blanks filled out, but only at the end of the column under the designation "Total valuation" are the figures, "$11,000." The assessment list, however, was made out and signed by the president of the defendant bank, and if there is anything wrong about it the bank has no right to complain. If the bank had neither horses, mules, hogs, money, notes, bonds nor any of the articles enumerated in the printed blank furnished by the assessor and returned by its president, he should have so specified in his return. But as he has chosen to say that the bank had $11,000 valuation of property called for on that list without specifying

the character, he has no right to complain of an imperfect assessment.

We discover no error in the judgment of the circuit court, and it is therefore affirmed. All concur.